**PULEO v. H. E. MOSS & CO. et al.**

**THE LUCELLUM.**

**No. A. 16346.**

District Court, E. D. New York.

Feb. 7, 1946.

Bergner & Bergner, of New York City (Jacob Rassner, of New York City, of counsel), for libellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Raymond Parmer, of New York City, of counsel), for H. E. Moss & Co.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan, of New York City, of counsel), for Todd Shipyard Corporation.

INCH, District Judge.

This is a suit in admiralty. Libellant is the administratrix of the estate of her husband Peter Puleo and as such sues for his wrongful death.

For convenience I shall hereafter refer to the deceased as Puleo, to the owner of the ship Lucellum as Moss Co., and to the contractor employing Puleo as Todd Co.

Libellant sued Moss Co., and the latter impleaded Todd Co. The authority of the administratrix to sue is not disputed. It is also conceded that the injuries suffered by Puleo were the competent producing cause of his death.

The Lucellum was a tanker and some time prior to the accident she had been taken to the Todd Co., place of business for repairs. She was light and in the course of making necessary repairs it was discovered that a valve in No. 7 tank was frozen and had to be freed. Thereupon a foreman of Todd Co., met with two other employees of Todd Co., one of them the witness, Pointon, in the presence of the chief engineer of the ship, and attempted to free the valve by means of a wrench put into the rim of the wheel of the valve; this was of no avail. As it was then close to four o'clock in the afternoon the said foreman told Pointon, "I will get a burner in the morning—you meet him on deck at seven o'clock and you will have to burn the bolts off the bonnet in order to free-up the valve." The chief engineer was then present and there is no evidence that he objected to this proposed procedure.

According to Pointon, it was necessary to perform this repair that a drain plug in the valve be removed. At the trial Pointon testified that he then removed this plug. The next morning, July 1, 1941, the foreman met Puleo and Pointon and said to the latter, "this will be your man—you have this man to burn that job."

Puleo had his burning apparatus with him, and standing nearby was the chief mate of the vessel. Pointon was a man 57 years of age, an engineer and machinist, working in shipyards around 30 years and as an engineer at sea for 20 years. Thereupon the foreman, Pointon and Puleo went down into No. 7 tank where, he said, he examined the bolts in the bonnet and found them quite corroded.

Apparently there was nothing then to indicate danger in No. 7 tank, for Puleo had not as yet lit his burner and the afternoon before, when Pointon had removed the drain plug of the valve, which was to release any water therefrom, some water did come out which Pointon says he "tasted" but there was no taste or indication of gasoline.

As everything was ready for Puleo to go to work the foreman said to Poinotn that he had several other jobs for him and they proceeded to go up from the tank but stood, temporarily, on the ledge watching Puleo light his burner. Immediately, as Puleo lit the burner, there was a violent flame explosion which burnt Puleo so badly that shortly thereafter he died, and also seriously burnt Pointon. The foreman, Gerard,

apparently is still confined in the hospital and was not available as a witness.

Shortly after the accident Mr. Healy, a certified chemist of undoubted qualifications, went down into No. 7 tank. Mr. Healy was certified by the American Bureau of Shipping to go aboard vessels to make inspections as to the presence of gasoline etc., in connection with the permitting of men to enter such vessel to perform various operations aboard her. In a sense, Mr. Healy appeared to be a disinterested witness. Four days before the accident he had made an examination of this tank among others using an electric indicator and apparently he had then found no evidence of gasoline or gas in that tank. This certificate, according to the usual procedure, was in the form of two original copies, one given to the captain or the chief officer of the vessel and other copies were sent to and distributed generally throughout the yard to department heads, snappers and foremen who might have work to perform aboard the vessel. It is a reasonable inference from the evidence, that the foreman, Gerard, was aware of this certificate at the time in question. Nevertheless, when Mr. Healy made his second examination almost immediately after the accident, he testified that he "found gasoline was then dripping from the valve." This is not controverted.

The mere statement of the accident showing the presence of gasoline vapor and the sudden explosion that burnt Puleo to death and injured Pointon and apparently the foreman, and blew the hat off, twenty feet away, of another witness who happened to be near the opening, shows, without more being necessary, that No. 7 tank was certainly a most unsafe place for Puleo to work in with a burner. As in the case of most accidents the cause therefor is made evident by an investigation of the surrounding circumstances. The question therefore is, was this explosion due to negligence, and if so, negligence on whose part?

■ The duty to exercise reasonable care to provide a safe place in which Puleo was to work rested both on the Moss Co., and the Todd Co. Assuming that there was negligence, each respondent claims the other was solely negligent. That Moss Co. would be liable to Puleo for personal injury caused by negligence of Moss Co. has only recently been again stated: Porello v. U. S., 2 Cir., 153 F.2d 605. Likewise Todd Co. might be liable to Puleo if jointly negligent.

In this search for possible negligence I am of the opinion, and so find, that No. 7 tank at the time of the accident was not only an unsafe place in which Puleo was to work with a burner, but that it was unsafe because of the previous careless performance of a duty resting upon the ship to use reasonable care to properly and efficiently flush away gasoline and its vapors from pipes and valves where work was to be done thereon called "hot work" such as Puleo was directed to do with the knowledge of the ship's officers who were then reasonably aware of the work about to be done and its danger.

■ This work of properly flushing pipes had to be done by the ship and by means of the ship's apparatus. Todd Co. had no part in this operation. Apparently from the fact that some water did come out of the pipe after removal of the drain plug the day before such flushing had been attempted at some time and no doubt this information occasioned the issuance of the said certificate by Mr. Healy.

The answer, however, is plainly shown by the testimony of the master of the ship, Swenson, taken by deposition, whereby he admits that a pipe line such as was in the No. 7 tank could not have been properly cleaned if gasoline was still in the pipe. (p. 26):

"Q. If the valve then, if the pipe line was properly flushed there should not be any gasoline? A. That is perfectly correct, sir.

"Q. Even the fact of the ballast going through it there shouldn't be any gasoline? A. That is right."

When Mr. Healy was called by the respondent, Moss Co., as its witness, he testified (p. 120):

"Q. Well, would you say that if a plug is removed from a valve, as in the case of the Lucellum, and that after the plug is removed at about 4 o'clock in the evening,

that the next morning at about 11 o'clock or 1 o'clock—at the time you got there—you found free gasoline dropping from the opening, would that be conclusive evidence that the pipe had not been properly flushed? A. Yes, I think that is true."

Healy found gasoline dripping from the pipe shortly after the explosion.

It is also indicated from the evidence that in case this flushing was not done carefully and efficiently gasoline fumes might be present because of rust etc., which might absorb the gas and yet become very dangerous should a flame be used and that the only safe way to avoid such danger was for the ship to flush with steam before permitting "hot work" on the pipes.

In my opinion, therefore, libellant has shown sufficiently, by a preponderance of evidence, that Moss Co. was negligent in failing to use reasonable care to furnish a safe place in which Puleo was to work with a burner. There was sufficient evidence to show that officers of the ship knew the afternoon before the accident and the following morning before the explosion took place that an employee of Todd Co., which unfortunatly happened to be Puleo, was to go down into No. 7 tank and use a burner.

■ This brings us to the impleaded-respondent, Todd Co. To be sure Todd Co., likewise owed a duty to furnish Puleo, by the exercise of reasonable care, a safe place in which to work. The place was unsafe due to the negligence of Moss Co. If this fact was known or reasonably should have been known to the foreman of Todd Co., the employer must stand the consequences.

However, after carefully considering all the evidence and the inferences reasonably to be drawn therefrom, I do not see how libellant has duly proved negligence on the part of Todd Co. (1) We have the certificate of the chemist Healy, which, while not in itself sufficient, should not be lost sight of. (2) We have the presence of officers of the ship who apparently made no objection. (3) We have the drain plug removed late in the afternoon of the day before the accident, and water issuing therefrom. Apparently at that time there was no indication that the flushing of the pipes had been carelessly done by those of the ship whose duty it was to do so. (4) It is almost incredible to think that these experienced workmen of Todd Co., would go down into a tank as to the safety of which there could be any question in their minds where their own lives might be at stake and at the same time watch until the burning operation had started, whereby Puleo was killed, and they very nearly lost their lives.

This seems to me to dispel any inference that might be drawn that some further examination should have been made by these employees of Todd Co., the morning of the accident. Their very presence there, with their long experience, seems to me to be a sufficient answer that they felt it was safe. Certainly there is not enough here, in my opinion, to find that they were negligent and did not under all the circumstances act as reasonably prudent men. The mere happening of this deplorable accident would not be sufficient, particularly where the cause thereof is plainly due to the neglect of the other respondent.

I find therefore, that the accident was due solely to the negligence of Moss Co., and it is unnecessary to discuss further the question of joint negligence or indemnification.

■■ Ordinarily the question of damages would be sent to a commissioner, but it seems to me that this is unnecessary in this case. The evidence shows that Puleo was 29 years of age when he died. He had a life expectancy of 36 years. He contributed about $45 a week towards the support of his family and he left surviving, his widow 27 years of age, a son 10 years, a daughter 9 years and another son 7 years. Libellant claims that the pecuniary loss occasioned by his death would be in the neighborhood of approximately $2,300 a year for the full period of 36 years. Unfortunately we cannot use insurance tables to that extent. He may have lived longer or a shorter time. He may have had illness and unfortunate circumstances. There is, however, evidence on which to find that there has been a serious pecuniary loss to this widow and family.

In my opinion, the amount that should be found, the finding of which is always difficult in such cases, should be $35,000.

Before a decree is presented, and within ten days from the date of the entry of this decision, findings of fact and conclusions of law desired by counsel should be presented.